1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

JOAN SCOTT, DEMETRIA CLEMTSON, JOHN DANNELLY, and LESLIE TAYLOR, Individually and on behalf of all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC.

Defendant.

Case No.:

**COMPLAINT—CLASS ACTION**

**(Jury Trial Demanded)**

Plaintiffs Joan Scott, Demetria Clemtson, John Dannelly, and Leslie Taylor ("Plaintiffs") bring this Complaint, individually and on behalf of all others similarly situated, against Defendant Amazon.com, Inc., ("Amazon" or "Defendant"), and allege upon personal knowledge as to their own actions, and upon information and belief as to counsel's investigations and as to all other matters, as follows:

### NATURE OF ACTION

1.      Defendant Amazon is a multinational technology company providing multiple technology products and services, including its eponymous e-commerce marketplace, video-on-demand services and, pertaining to this action, devices and services that make use of its Alexa virtual assistant ("Alexa Devices"). Sales of Amazon's Alexa Devices have exploded in the past five years. In four years—from Alexa's release in 2015 to 2019—Amazon sold over 100 million Alexa Devices. From January 2019 to January 2020, Amazon doubled the sales of Alexa Devices, meaning Amazon sold

CLASS ACTION COMPLAINT - 1

another 100 million Alexa Devices in just a year.

2.      Amazon represents that its Alexa Devices work by listening for a specific "wake word" such as "Alexa" that, once spoken, triggers the Alexa device or service to listen to users and respond to user commands. What it does not represent, however, is that when Alexa hears any word or phrase it identifies (correctly or not) as a "wake word," Amazon initiates a process to record the surrounding audio and create and permanently store the recording.  The recordings may capture the user's voice, and the voice of any individual's voice near the Alexa device, as well as commands, other sounds, and identifying information like usage data, location data, and personal information.

3.      Amazon, thus, has millions of recorded interactions between users and its Alexa Devices. Worse, not all those recordings contain conversations that consumers intend for an Alexa Device to hear. In fact, because Alexa Devices are trained to start recording when the device *believes* it heard a "wake word," user conversations may be recorded when the Alexa Device misinterprets the user's speech and incorrectly identifies a "wake word" that was not said. Thus, Alexa Devices may be recording private conversations that users never intended Alexa, or anyone else, to hear.

4.      Amazon's recordings often contain highly sensitive information. For instance, even when a user intends to interact with an Alexa Device, the interactions between Alexa Devices and their owners range from the mundane, such as "Alexa, what is the weather like today?" to the deeply personal, such as "Alexa, what is the number for the suicide hotline?" Amazon captures, records, and permanently stores those conversations for Amazon personnel to listen to and analyze later. Additionally, when an Alexa Device incorrectly identifies a "wake word," it begins recording private conversations that users did not intend for the Alexa Device to hear. Indeed, one news article identified thousands of words that incorrectly trigger smart devices like Alexa to listen and record (including words bearing little familiarity to any "wake word") like "unacceptable," "election," and "a letter."[1] Each time an Alexa Devices mistakes those normal words with a "wake word," it records the contents of the ongoing, private conversation.

---

[1] Dan Goodin, *Uncovered: 1000 phrases that incorrectly trigger Alexa, Siri, and Google Assistant*, ARS Technica (Jul. 1, 2020), https://arstechnica.com/information-technology/2020/07/uncovered-1000-phrases-that-incorrectly-trigger-alexa-siri-and-google-assistant/

CLASS ACTION COMPLAINT - 2

5.      Despite Alexa's built in listening and recording functionalities, Amazon failed to disclose that it makes, stores, analyzes, and uses recordings of these interactions at the time Plaintiffs' and putative class members' purchased their Alexa Devices. Amazon, furthermore, failed to disclose that it uses human and artificial intelligence analysts to listen to, interpret, and evaluate these records and otherwise uses these recordings for its own business purposes. Amazon thus has a repository of tens of millions of conversations that it maintains and listens to and that is available for Amazon's use.

6.      At the time Plaintiffs and putative class members purchased their Alexa Devices, Amazon misrepresented the extent to which Alexa Devices record user interactions and how Amazon uses them. Amazon marketed Alexa Devices as functioning—*i.e.* listening to and interacting with user speech— only upon the intentional use of "wake words." For example, Alexa Devices only "light up" or turn on when users address the Alexa Device with a "wake word" and, similarly, Alexa will respond to user commands only after the user addresses it with a "wake word."

7.      For years, Amazon represented that users "control Alexa with [their] voice" and that those interactions with Alexa were "stream[ed] . . . to the cloud" and were used to "respond to [a user's] requests and improve [Alexa's] services." However, Alexa Devices record activity even, in some cases, when not intentionally addressed with a "wake word" and sends the recordings to Amazon, whose artificial intelligence, employees and, upon information and belief, third party contractors freely listen to and analyze their contents and make use thereof for Amazon's business purposes. At the time Plaintiffs and putative class members purchased their Alexa Devices, Amazon failed to disclose its widespread creation, storage, and use of those records for its own business purposes that extend beyond improving or personalizing Alexa's services.  Instead, Amazon represented that Alexa sent audio to the cloud for the sole purpose of generating an appropriate response.

8.      Amazon's conduct in surreptitiously recording consumers has violated federal and state wiretapping, privacy, and consumer protection laws.

### THE PARTIES

9.      **Plaintiff** Joan Scott resides in Texas and owns an Echo Dot and has interacted with it to, among other things, issue commands and ask questions.  Scott noticed the Echo Dot would activate even

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

when she, or other persons in her home, had not issued any commands.  Scott works in the healthcare industry and, as part of her job, communicates and works with HIPAA-protected information that Alexa may have captured without Scott's intent.   Scott purchased a newer model approximately two years ago with a mute function, which she used to prevent Amazon from recording, storing, and listening to her private conversations.

10.     **Plaintiff** Demetria Clemtson resides in Georgia and purchased an Echo Dot around September 2017. She and her family, including her three kids, used the Echo Dot to, among other things, issue commands and ask questions.  Clemtson works in customer service for a healthcare company and, as part of her job, communicates and works with HIPAA-protected information that Alexa may have captured without Clemtson's intent.  Clemtson stopped using the device in 2021 when she learned that Amazon may be recording, storing, and listening to her conversations without her intent.

11.     **Plaintiff** John Dannelly resides in Colorado and purchased an Alexa Device in 2017 and owns an Amazon TV and Kindle Fire, devices that contain and work with Alexa.  Dannelly used his Alexa Devices to, among other things, issue commands and ask questions.  Dannelly works in the psychiatric field and communicates and works with HIPPA-protected information that Alexa may have captured without Dannelly's intent.  Dannelly stopped using his Alexa devices when he learned that Amazon may be recording, storing, and listening to his conversations without his intent.

12.     **Plaintiff** Leslie Taylor resides in New Jersey and purchased an Echo and Echo Dot around the end of 2016 or early 2017.  Taylor used his Alexa Devices to, among other things, issue commands and ask questions.  Leslie is a substance abuse counselor and has private conversations with his patients that Amazon may have recorded and stores without his knowledge or intent.  Taylor stopped using his Alexa devices when he learned that Amazon may be recording, storing, and listening to his conversations without his intent.

13.     **Defendant** Amazon.com, Inc. is a Delaware corporation with its headquarters and principal place of business at 410 Terry Avenue North, Seattle, Washington. Amazon promotes and sells Alexa Devices and wholly owns, operates, and manages Alexa and all its related software and hardware.

CLASS ACTION COMPLAINT - 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**JURISDICTION AND VENUE**

14.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) because at least one Class member is of diverse citizenship from Amazon, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest or costs.

15.     This Court has personal jurisdiction over Amazon because its principal place of businesses and headquarters are in Washington.  Additionally, a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in this State and Amazon knowingly sold Alexa devices in Washington.

16.     Venue is proper in this District because Amazon has its principal place of business and headquarters in this District in Seattle, Washington; many of the acts and transactions giving rise to this action occurred in this district; and Amazon conducts substantial business in this district and has intentionally availed itself of the laws and markets of this District.

**FACTUAL ALLEGATIONS**

17.     Amazon is a multinational technology company headquartered in Seattle, Washington. It is primarily known for its e-commerce marketplace, which offers various services including selling and shipping products available on Amazon.com; streaming on-demand videos, television shows, and movies through its Prime Video service; and creating and manufacturing devices such as tablets and microphone-equipped smart speakers equipped with Amazon's proprietary voice recognition and artificial intelligence program "Alexa" ("Alexa Devices").

18.     Amazon released its first smart speaker in 2010, which it called "Echo," and has since expanded to offering numerous other Echo smart speaker products. In 2014, Amazon launched the "Alexa" virtual assistant program, which is now integrated with Echo devices and other Alexa Devices. The Alexa virtual assistant operates through Amazon's Alexa Voice Service, which uses artificially intelligent voice recognition and natural language comprehension processes to identify, interpret, and respond to consumers' speech, allowing consumers to interact with Amazon's Alexa Devices.

CLASS ACTION COMPLAINT - 5

**A.      Alexa Devices**

19.      Alexa Devices are available in various models, including "Echo," "Echo Dot," "Echo Plus," "Echo Sub," "Echo Show," "Echo Input," "Echo Flex," and "Echo Dot Kids" for children. Alexa Devices are microphone-equipped speakers and are marketed as enabling users to interact with the Alexa "virtual assistant" using "wake words," allowing users to issue commands and ask questions of Alexa. Upon "waking" Alexa, a user may use his or her voice to tell the Alexa Device to perform one or more of many various functions. For example, users may ask Alexa to play music; control house functions through other smart devices, like thermostats, smart outlets, and smart light bulbs; perform internet-based searches by asking Alexa questions; and, obtain information such as the news and weather. In 2019, Amazon sold over 100 million Alexa Devices worldwide, with approximately 50 million sales in the United States alone. By 2020, the number of Alexa Devices sold doubled to over 200 million, and sales continue to grow.

20.      A typical Alexa Device consists of, at a minimum, a speaker, microphones, a computer, and the Alexa program itself. Alexa devices also require internet connectivity to operate because Alexa sends commands to the cloud, purportedly so that Alexa may adequately respond. Since 2014, Amazon has released more sophisticated Alexa Devices, such as the "Echo Show," which also contain a camera and screen, and has also integrated Alexa into other Amazon products such as Amazon's Kindle e-book readers, Fire tablets, and the Amazon Fire TV media player.

21.      Alexa can also be added to non-Amazon hardware products through a standalone Alexa app (for Apple or Android mobile devices) or when making use of an Amazon program or app on a non-Amazon device (such as when using the Kindle app on an iPad or when browsing on Amazon's retail market on a mobile phone).

**B.      Alexa Functionality**

22.      To use Alexa, a consumer must address the Alexa Device using a "wake word" such as "Alexa" or "Echo." The wake word must precede any specific command or question or Alexa will not respond. For example, a user might say "Alexa, turn on the lights" or "Alexa, play *I Am the Walrus* by the Beatles" or "Alexa, what is the number for the suicide hotline?" Alexa Devices are constantly

CLASS ACTION COMPLAINT - 6

listening for the "wake word." When Alexa "hears" the "wake word," in addition to attempting to perform the requested function, the device automatically begins audio recording. That recording is, in turn, automatically uploaded to Amazon's Alexa Cloud—a cloud-based data storage and manipulation service. The only way to stop an Alexa Device from "listening" is to turn off the device, mute it, or unplug it. Since the device is intended to be "hands free" and on "standby" to receive commands and provide information at the convenience of the owner, muting it or shutting it off entirely removes the product's function and usefulness.

23.     The Alexa Cloud transcribes a consumer's voice into text and "translates" that text into a language statement comprehensible by the computer known as an "intent." The Alexa Cloud then sends this "intent" back to the Alexa Device, telling it to act on the "intent" using a given functionality known as a "skill." One skill might be playing music, another might be locking or unlocking a smart-lock. In other words, a consumer accesses content or functionality in a "skill" by asking Alexa to invoke one of its "skills" using a speech command. While many "skills" are developed by Amazon (and are available by default), third-party developers are also permitted to develop skills for Alexa, so as to incorporate Alexa voice command functionality into the functionality of a third-party app or smart device.

24.     While Alexa Devices will listen to—and record—speech and other sound indiscriminately, regardless of the speaker, to set up an Alexa Device and use the companion Alexa app, a consumer must have a registered Amazon Alexa account. The consumer must also set-up the device by pairing the Alexa Device with the Alexa app on a computer or mobile device. Once set up and paired, the Alexa Device can be used by anyone within speaking range.

## C.     Secret Recordings

25.     Unbeknownst to Plaintiffs and the putative class when they purchased their Alexa Devices, every interaction between a user and Alexa—including instances where Alexa falsely identifies a "wake word"—is recorded, and that recording is sent to Amazon where it stored permanently and reviewed freely by Amazon, its employees, and third parties.

26.     Amazon, however, markets its Alexa Devices as responding to only deliberate

CLASS ACTION COMPLAINT - 7

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

interactions (*i.e.* upon the use of a "wake word"), and for years represented that the recordings were "streamed" to the cloud and used only to allow Alexa to respond to the command and to help personalize Alexa's responses to the user.

27.     At the time Plaintiffs and members of the putative class bought their devices, Amazon failed to disclose to users that it keeps recordings of consumers' interactions, intentional or not, for its own use. These recordings are permanently stored on Defendant's servers and are used by Amazon's employees to train and improve Amazon's artificial intelligence projects and for other business purposes not essential for the functioning of Alexa Devices.

28.     Furthermore, Amazon stores, retains, and analyzes recordings of conversations that users never intended for Alexa to hear. At the time of purchase, Amazon represented to Plaintiffs and putative class members that Alexa Devices activate only upon hearing specific "wake words." The devices, however, often activate without a legitimate prompt, including—though not limited to—when the devices "mishears" speech as containing the "wake word." For example, if a consumer were to say, "I'm going to call Alex and ask him…" Alexa might truncate "Alex" and "and" and "hear" the word "Alexa," causing it to wait for a command and—more importantly—to immediately begin recording. Additionally, the Alexa Device may turn on upon hearing a "wake word" spoken on a television set or on the radio and begin listening and recording. This can lead to the recording and analysis of conversations, speech, and other sounds that are private in nature and not intended for Alexa—or Amazon's—"ears." Thus, not only is Amazon unlawfully and deceptively storing recordings of intentional interactions with Alexa, but also speech and other sounds never intended to be "heard" by Alexa at all.

29.     One article, in fact, found that smart devices like Alexa respond to 1,000 "normal" words that are not supposed to trigger the Alexa Device. For instance, the word "election" turns the Alexa Device on, triggering it to record conversations. Given the frequent media and news coverage of, for instance, the presidential election, and the fact that users may discuss the election or election results in their homes, Alexa Devices would be frequently and mistakenly turning on and recording conversations that users would not expect to even be "heard" by Alexa.

CLASS ACTION COMPLAINT - 8

30.     A study performed by Northeastern University found that smart speakers, including Alexa Devices, frequently wake up and start recording without the presence of a "wake word."[2]  In that study, researchers found that smart devices, including Alexa Devices, wake up and start recording even though no "wake word" was spoken as often as 19 times per day.  On average, the devices turned on at least 1.5 times per day—meaning, on average, every single day Alexa Devices are recording at least one private conversation.[3]  A follow-on study found smart speakers, like Alexa, incorrectly activated almost once *per hour*,[4] meaning Alexa Devices are frequently recording conversations that were not meant for it to hear, respond to, record, or listen to.

31.     Amazon knew, prior to the time Plaintiffs and the putative class members purchased their Alexa Devices, that the Alexa Devices were being activated by words or sounds other than the wake word, and thus knew or should have known that individuals' voices were being recorded even when those individuals did not intend to be recorded or otherwise consent to being recorded. Amazon, furthermore, knew but failed to disclose it permanently stored, listened to and used recordings of these unintentional interactions for purposes unrelated to the operation or response of the Alexa Devices. Nevertheless, Amazon has taken no remedial action to address the interception of the communications of Plaintiffs and the putative class, but rather has sought to continue and expand it.

32.     Once the recording is made and sent to Amazon, its employees may access and identify the location for the device that made the recordings. It can also review and use  other data collected by Alexa Device, such as the functionalities used by the owner and any information contained in the recording. Amazon also aggregates this data with data from other sources, such as the user's Amazon shopping history, to create fulsome profiles of information that may include deeply personal and private

---

[2] Daniel Bennett, *Alexa, how often do you listen in?*, Science Focus (Mar. 11, 2020), https://www.sciencefocus.com/future-technology/alexa-how-often-do-you-listen-in/.

[3] *Id.*

[4] Daniel J. Dubois, et al., *When Speakers Are All Ears*, Monitor Lab (Jul. 21, 2020), https://moniotrlab.ccis.neu.edu/smart-speakers-study-pets20/#__utma=72955916.1791290930.1624990319.1624990321.1624990321.1&__utmb=72955916.1.10.1624990321&__utmc=72955916&__utmx=-&__utmz=72955916.1624990321.1.1.utmcsr=google|utmccn=(organic)|utmcmd=organic|utmctr=(not%20provided)&__utmv=-&__utmk=14463537.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

information that Amazon is able to use for its own business purposes.

33.    Not only does this covert recording, storing, and analyzing of consumer information entail a profound violation of privacy, but given the increasingly all-encompassing scope of Alexa Devices' ability to interface with aspects of a consumer's life (e.g., controlling home security features such as locks and lights, and providing access to personal medical or identity-related information) Amazon's storage of the recordings—unnecessary to the functionality of Alexa Devices—creates a risk from hacking or other unauthorized leveraging of consumer data and processes by third parties (or Amazon personnel).

34.    Amazon fully admitted as late as 2020 that it previously failed to clearly disclose to consumers that human analysts would be listening to the recordings created by those Alexa Devices for purposes unrelated to Alexa's performance or a personalized response. Dave Limp, senior Vice President of Devices and Services at Amazon, told PBS Frontline during interviews for their documentary *Amazon Empire: The Rise and Reign of Jeff Bezos*:

> NARRATOR:
> Once the device is awake and the blue light is on, it's recording. And last year, it was revealed that Amazon employs thousands of people around the world to listen and transcribe some of those recordings to help train the system.
> JAMES JACOBY [Interviewer]:
> Do you think that you did a good enough job of disclosing that to consumers? That there are humans involved in listening to these recordings?
> DAVE LIMP:
> We try to articulate what we're doing with our products as clearly as we can. But if I could go back in time and I could be more clear and the team could be more clear on how we were using human beings to annotate a small percentage of the data, I would, for sure. What I would say, though, is that once we realize that customers didn't clearly understand this, within a couple of days we added an opt-out feature so that customers could turn off annotation if they so chose. And then within a month or two later we allowed people to auto-delete data, which they also asked for within that time frame.
> We're not going to always be perfect, but when we make mistakes, I think the key is that we correct them very quickly on behalf of customers.
> NARRATOR:
> But even one of the founders of Amazon Web Services approaches his Alexa devices with caution.
> JAMES JACOBY:
> When do you turn off your Alexa?
> ROBERT FREDERICK, Former senior manager, Amazon Web Services:
> I turn off my Alexa when I know for a fact that the conversation that I am going to have or whenever I just want to have a private moment. I don't want certain conversations to be heard by humans, conversations that I know for a fact are not things that should be shared, then I actually turn off those particular listening

CLASS ACTION COMPLAINT - 10

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

devices.[5]

35.     More than 200 million Amazon smart speaker devices have been sold worldwide, leading to the unauthorized capture, recoding, and storing of millions of private conversations on Amazon's servers. Recorded conversations may include discussions about medications, business deals, banking details, phone numbers, and full names. Amazon's Echo Dot Kids, which is a smart speaker specifically designed for children, also records and collects transcripts of voice recordings and other user data produced by children. Additionally, Alexa does not distinguish between conversations entered into only by Amazon users, Amazon Prime Members, and Alexa Device owners.  Rather, Alexa Devices may record conversations involving a speaker who does not have any contractual relationship with Amazon.

36.     Users may opt to set up "voice profiles" for themselves and members of their household. This allows Alexa to identify who is speaking and personalize their experience accordingly. More importantly—for Amazon's purposes—this allows even more sophisticated and thorough individualized data aggregation on Alexa Cloud, helping Amazon to create a robust profile of consumers and their household members that it uses for its own business purposes.

37.     Amazon does not delete its recordings after they have fulfilled their function—i.e. after they have been converted to an "intent" and used to perform a "skill," as Amazon represents. Rather, Amazon permanently stores recordings on its own servers. These recordings are then trawled by both artificial intelligence programs and human employees for Amazon's own commercial purposes, including for use in training various Amazon artificial intelligence projects. Upon information and belief, this personal information is also shared with third parties and aggregated with data acquired from third parties to develop a frighteningly robust profile of a given Alexa user.

38.     The only way to stop Amazon from making these recordings is to mute the Alexa Device's microphone or unplug the device, thereby defeating its utility. Further, while Alexa Device users may request that Amazon delete all of the information obtained from a smart speaker device, a user may not stop Amazon from collecting the recordings in the first place. Amazon did not provide users with the ability to delete records until 2019 and, by then, Amazon's analysts may have already

---

[5] PBS Frontline, *Amazon Empire: The Rise and Reign of Jeff Bezos*, transcript available at https://www.pbs.org/wgbh/frontline/film/amazon-empire/transcript/ (last visited May 14, 2021).

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

listened to the recordings before that ability was enabled.

39.     Some smart speakers are capable of operating fully even without an internet connection, meaning that user interactions are not recorded or stored.[6]   Amazon's practice of recording, storing, and listen to interactions, thus, is not necessary for Alexa's operation.   Rather, it is a means for Amazon to compile a massive repository of user data and to use that data for its own business purposes.

**D.     Plaintiffs Did Not Expect or Know Amazon Permanently Stored Their Interactions**

40.     Plaintiffs each purchased and used one or more Alexa Devices, including the "Echo," "Echo Dot," and the "Echo Show." and devices that are compatible with Alexa, like the Amazon TV and Amazon Kindle Fire.

41.     Every time Plaintiffs' Alexa Devices heard a "wake word"—whether accurately or not— Amazon recorded Plaintiffs' voices and other sounds and permanently stored those recordings on its servers. It is possible—though known only to Amazon—that Amazon also had Plaintiffs' recordings analyzed by either human or artificial intelligence analysts and made other uses of those recordings for its own business purposes.

42.     Additionally, Plaintiffs' Alexa Devices, on average, woke up between 1.5 to 19 times per day and up to almost once per hour without the presence of any "wake word."   Each Plaintiff, therefore, had at least one, but likely, many, private conversations that their Alexa Device heard, and that Amazon subsequently recorded and used for purposes unrelated to the operation of the Alexa Device.  Plaintiffs did not intend for Alexa to hear those private conversations and did not consent to Alexa recording them or to Amazon permanently storing those conversations outside the Alexa cloud and listening to them for purposes unrelated to the operation of the Alexa Devices.

43.     Plaintiffs were unaware at all relevant times that their Alexa Devices were recording and permanently storing their voices and other sounds, including private conversations the Alexa Devices recorded when they were "awoken" by another individual in the house or after incorrectly identifying a "wake word."   Plaintiffs were unaware that their voice would be recorded and stored even when

---

[6] Bret Kinsella, *Sensory is Enabling Offline Smart Speakers with No Cloud Connectivity to Maximize Security*, Voicebot.AI (Jan. 18, 2019).

CLASS ACTION COMPLAINT - 12

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

speaking at a distance and not intending to speak to Alexa at all. Plaintiffs were likewise unaware at all relevant times that the voices and other sounds of other members of their household and their guests would be captured and stored by Amazon as described.

44.     Plaintiffs expected his Alexa Device to only "listen" when prompted by the use of the "wake word," and did not expect that recordings would be intercepted, stored, or evaluated by Amazon. These considerations were material to the Plaintiffs as a reasonable consumers and purchasers of Alexa Devices. Had Plaintiffs known that Amazon permanently stored and listed to recordings made by its Alexa device, Plaintiffs would have either not purchased the Alexa Device or demanded to pay less.

## CLASS ALLEGATIONS

45.     Plaintiffs bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Fed. R. Civ. P. 23 and other applicable rules of civil procedure. Plaintiffs seek to represent the following putative class (the "Class"):

> All adult U.S. citizens who owned and used an Alexa Device or downloaded and used the Alexa app during the Class Period.

46.     The "Class Period" dates back four years (or the length of the longest applicable statute of limitations for any claim asserted) from the date this action was commenced and continues through the present and the date of judgment. Specifically excluded from the Class are: (a) any officers, directors or employees of Defendant; (b) any judge assigned to hear this case (or spouse or immediate family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and (e) any attorneys of record and their employees.

47.     Plaintiffs reserve the right to amend or modify the class definition(s) with greater specificity, by further division into subclasses, and/or by limitation to particular issues.

48.     Amazon subjected Plaintiffs and Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above is the Amazon's standard business practice.

49.     **Numerosity**. The Class members are so numerous that joinder of each individual class member would be impracticable and unfeasible. The Class likely includes at least tens of millions of

CLASS ACTION COMPLAINT - 13

individuals who purchased and used Alexa Devices. The individual Class members are ascertainable, as the names and addresses of all class members can be identified in the business records maintained by Amazon. Given that over 200 million Alexa Devices have been sold worldwide, with approximately half of those in the United States, the number of Class members is likely in the tens of millions, and can be determined more precisely through discovery. The Class is, however, so large that Class members cannot be consolidated in one complaint and it would be impractical for each to bring suit individually. Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

50.   **Commonality and Predominance**. There is a well-defined community of interest among the Class members and common questions of *both* law and fact predominate over questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

A.   Whether Alexa Devices and the Alexa app recorded the voices and other sounds of people in proximity to them;

B.   Whether Amazon stores such recordings on its servers;

C.   Whether Amazon analyzed or otherwise made use of such recordings;

D.   Whether such analysis included human and/or artificial intelligence analysis;

E.   Whether a reasonable consumer would have purchased an Alexa Devices at the sold price if they were aware that the Alexa Devices were a) recording sounds even when not intentionally addressed; b) permanently storing recorded sounds; c) allowing recorded sounds to be analyzed by human and/or artificial intelligence analysts; d) allowing recorded sounds to be utilized by Amazon for its own business purposes; e) capturing and storing sounds made by other members of the owner's household and guests;

F.   Whether Amazon was required to obtain consent from Alexa Device owners to a) record; b) store; c) analyze; d) make other business uses of, Alexa Device owners' speech and other sounds, as well as those of other members of the Alexa Device owner's household and guests;

G.   Whether Amazon in fact obtained consent from Alexa Device owners to a) record; b)

CLASS ACTION COMPLAINT - 14

store; c) analyze; d) make other business uses of, Alexa Device owners' speech and other sounds, as well as those of other members of the Alexa Device owner's household and guests.

H.    Whether Alexa Device owners had a reasonable expectation of privacy and confidentiality in the content of their speech and other sounds;

I.    Whether Amazon unlawfully collected and disseminated Alexa Device owners' personal information;

J.    Whether Amazon omitted material facts with regard to the recording, storage, analysis, and use of Alexa Device owners' speech and other sounds;

K.    Whether Amazon made affirmative misrepresentations as to its conduct in recording storage, analysis, and use of Alexa Device owners' speech and other sounds;

L.    Whether Amazon was required to warn Alexa Device owners that their speech and other sounds would be recorded, stored, analyzed and used for Amazon's business purposes;

M.    Whether Amazon did warn Alexa Device owners that their speech and other sounds would be recorded, stored, analyzed and used for Amazon's business purposes;

N.    Whether Alexa Devices recorded speech and other sounds even when not activated by use of a "wake word";

O.    Whether Amazon adequately disclosed to Alexa Device owners that their speech and other sounds would be recorded, stored, analyzed, and utilized in the manner described;

P.    Whether the storage and analysis of Alexa Device recordings was necessary for the functionality of those devices;

Q.    Whether Alexa Devices permanently stored or analyzed text, email, and other messages they are instructed to send by consumers;

R.    Whether Amazon's conduct in recording, storing, analyzing, and utilizing Alexa Device owners' speech and other sounds violated the Federal Wiretap Act, 18 U.S.C. §§ 2511, 2520;

S.    Whether Amazon's conduct in recording, storing, analyzing, and utilizing Alexa Device

CLASS ACTION COMPLAINT - 15

owners' speech—notwithstanding its representations that Alexa begins "listening" only upon "hearing" a "wake word" and its omission of the fact that consumer recordings are stored, analyzed and used for Amazon's business purposes—violates the Washington Consumer Protection Act, RCW § 19.86.010 et seq.;

T. Whether Amazon's conduct in recording, storing, analyzing, and utilizing Alexa Device owners' speech and other sounds violated the Washington wiretapping law, RCW § 9.73.030;

U. Whether Amazon's conduct was knowing or intentional;

V. Whether, as a result of Amazon's conduct, Plaintiffs and the Class are entitled to damages, including compensatory, statutory, punitive or treble damages and the amount of such damages; and

W. Whether, as a result of Defendant's conduct, Plaintiffs and the Class are entitled to equitable relief, such as declaratory or injunctive relief.

51. **Typicality**. Plaintiffs' claims are typical of those of the Class members in that they arise out of the same course of conduct of Amazon. Plaintiffs and the Class members each sustained, and will continue to sustain, damages arising from Amazon's common and uniform course of wrongful conduct, as alleged more fully herein. The effort Plaintiffs undertake to pursue their own claims will significantly benefit the Class' members because of the identical nature of the issues across the Class.

52. **Adequacy of Representation**. Plaintiffs will continue to fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs share a common interest with the Class members, with respect to the conduct of the Defendant herein and redress of injury. Plaintiffs have suffered an injury-in-fact as a result of the conduct of the Defendant, as alleged herein. Plaintiffs have retained counsel who are competent and experienced in the prosecution of complex consumer fraud, mass tort, and class actions. Plaintiffs and their counsel intend to prosecute this action vigorously and faithfully for the benefit of the Class members. Plaintiffs and Plaintiffs' counsel have no interests contrary to the Class members, and will fairly and adequately protect the interests of the Class.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

53.     **Community of Interest.** The proposed Class has a well-defined community of interest in the questions of fact and law to be litigated. The common questions of law and fact are predominant with respect to the liability issues, relief issues and anticipated affirmative defenses. The named Plaintiffs have claims typical of the Class members.

54.     **Superiority**. The certification of the Class in this action is superior to the litigation of a multitude of cases by members of the putative Class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are members of the Class who are unlikely to join or bring an action due to, among other reasons, their reluctance to spend large sums of time and money to recover what may be a relatively modest individual recovery. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the class members in relationship to the benefits received. The damages and other potential recovery for each individual member of the Class are modest relative to the substantial burden and expense of individual prosecution of these claims. Given the amount of the individual members of the Class' claims, few, if any, members could or would afford to seek legal redress individually for the wrongs complained of herein. Even if the members of the Class themselves could afford individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

55.     In the alternative, the above-referenced Class may be certified because:

a.   The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members' claims which would establish incompatible standards of conduct for Defendant;

b.   The prosecution of separate actions by individual members of the Class would create

CLASS ACTION COMPLAINT - 17

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    a risk of adjudications which would as a practical matter be dispositive of the interests

2    of other members of the Class who are not parties to the adjudications, or which

3    would substantially impair or impede the ability of other members to protect their

4    interests; and,

5    c.    Defendant has acted or refused to act on grounds generally applicable to the Class,

6    thereby making appropriate final and injunctive relief with respect to the Class.

7                                    **COUNT ONE**

8                          **Violation of the Federal Wiretap Act**

9                            **18 U.S.C. §§ 2510 *et seq.***

10   56.    Plaintiffs incorporate all preceding and succeeding allegations as if fully set forth herein.

11   57.    Plaintiffs bring this claim individually and on behalf of the Class.

12   58.    The Federal Wiretap Act, 18 U.S.C. § 2510 et seq., prohibits the interception of any wire,

13   oral, or electronic communications. The statute confers a civil cause of action on "any person whose

14   wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of

15   this chapter." 18 U.S.C. § 2520(a).

16   59.    "Electronic communication" is defined as "any transfer of signs, signals, writing, images,

17   sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio,

18   electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce…"

19   18 U.S.C. § 2510(12).

20   60.    "Intercept" is defined as "the aural or other acquisition of the contents of any wire,

21   electronic, or oral communication through the use of any electronic, mechanical, or other device." 18

22   U.S.C. § 2510(4).

23   61.    "Contents" is defined as "includ[ing] any information concerning the substance, purport,

24   or meaning of that communication." 18 U.S.C. § 2510(8).

25   62.    "Person" is defined as "any employee, or agent of the United States or any State or

26   political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or

27   corporation." 18 U.S.C. § 2510(6). Plaintiffs and the Class are persons as identified by § 2510(6) of the

CLASS ACTION COMPLAINT - 18

1    Act.

2        63.    Alexa Devices are devices for the purposes of the Act because they include software and

3    hardware used to intercept electronic communication.

4        64.    Amazon, through its design, authorship, programming, knowing and intentional

5    installation, activation, and/or other involvement with Alexa Devices and the Alexa virtual assistant has

6    intentionally intercepted, endeavored to intercept, and/or procured others to intercept or endeavor to

7    intercept, electronic communications and described herein, in violation of 18 U.S.C. § 2511(1)(a).

8    Specifically, Amazon intercepted Plaintiffs' and the Class's communications with Alexa during the real-

9    time interface between the Alexa Device and the Alexa Cloud and other Amazon services and processes,

10    to acquire the content of Plaintiffs and the Class' electronic communications, including their personally

11    identifiable information as described. When Plaintiffs interacted with Alexa, Amazon recorded those

12    communications, permanently stored them separately from the Amazon Cloud, and used those records

13    for purposes separate from the use or functionality of the Alexa Devices. Before they purchased their

14    Alexa Devices, Plaintiffs and the Class had no knowledge of and had never consented to Amazon's

15    recording, storing, and evaluation of their communications with Alexa for purposes unrelated to the

16    Alexa Devices and its responses to Plaintiffs' questions or commands.

17        65.    The intercepted communications include, but are not limited to: dates, times, locations

18    and purpose of appointments and parties thereto; media preferences; dates, times and parties to phone

19    calls and other electronic communications; contents of email, text, and other electronic messages;

20    contents of conversations; the contents of online searches; IP addresses; zip codes; product model

21    numbers; hardware and software versions; region and language settings; contents of media consumed

22    or accessed through or in the presence of an Alexa Device; the contents of a user's "phone book" of

23    contacts; conversations in people's homes; people singing; involuntary sounds; bank details; HIPAA-

24    protected information; and full names.

25        66.    As described herein, Amazon intercepted Plaintiffs' and the Class's communications

26    during transmission, simultaneous with their occurrence.

27        67.    As a result, Plaintiffs and the Class have suffered harm and injury, including due to the

CLASS ACTION COMPLAINT - 19

interception and transmission of private and personal, confidential, and sensitive communications, sounds, content, and data.

68.     Plaintiffs and the Class have been damaged by the interception and/or disclosure of their communications in violation of the Wiretap Act, as described herein, and are thus entitled to preliminary, equitable, or declaratory relief; statutory and punitive damages; and reasonable attorneys' fees and litigation costs reasonably incurred. 18 U.S.C. § 2520(b).

## COUNT TWO

### Violation of the Washington Consumer Protection Act

### Wash. Rev. Code §§ 19.86 *et seq*.

69.     Plaintiffs incorporate all preceding and succeeding allegations as if fully set forth herein.

70.     Plaintiffs bring this claim individually and on behalf of the Class.

71.     The Washington Consumer Protection Act (CPA) prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW § 19.86.020.

72.     Amazon committed unfair acts and practices in the conduct of trade or commerce, in violation of RCW 19.86.020, by violating Alexa Device owners' rights to privacy, by storing private information about Alexa Device owners, and by misrepresenting its recording practices to Alexa Device owners, because at the time Plaintiffs' and the putative class's purchased their Alexa Devices, Amazon misrepresented and omitted that it permanently stored, analyzed, and utilized recordings for its own business purposes. Upon information and belief, Amazon shared its collected data with third parties for profit or other business purposes, which further violates the CPA.

73.     Amazon represented to consumers that its Alexa Devices are simple human-computer interfaces that respond to consumer commands to perform computing functions and omitted that it records speech and other sounds of the user and their household, and stores such recordings. Amazon, further, represented that it only "streamed" interactions with Alexa Devices to the Cloud to enable it to respond, failing to disclose that Amazon would record and permanently store those interactions on its servers.  Amazon also omitted that it has these recordings analyzed by human and artificial intelligence

CLASS ACTION COMPLAINT - 20

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

analysts and makes other uses of this data for its own business purposes. Instead, at the time Plaintiffs and members of the putative class purchased their Alexa Devices, Amazon misrepresented to consumers that the only usage of data is to respond to commands and personalize that user's experience, omitting disclosure of the fact that user data—including but not limited to audio recordings—are analyzed and utilized for Amazon's own business purposes not related to a given user's experience of the Amazon Device. Finally, Amazon misrepresented Alexa Devices as only "listening" when intentionally addressed with a "wake word," when in fact Alexa Devices can begin "listening" and recording without being intentionally addressed at all.

74.     Amazon committed its conduct in the context of trade or commerce. Amazon sells its Alexa Devices in interstate commerce in markets across the nation. Additionally, Alexa Device owners can use their Alexa Device to make purchases, including through the Amazon e-commerce marketplace. Additionally, Amazon uses its covert recordings of Alexa Device owners for business purposes affecting interstate commerce, including on information and belief by providing that data to third parties for profit.

75.     The public interest is harmed by Amazon's conduct in recording, storing, analyzing, and utilizing the private speech and other sounds of the citizens of this state who have a fundamental privacy interest in this information. Additionally, to the extent that Amazon uses this data for improvements to its products and services or transmits such data to third parties for profit or other benefit, Amazon is deriving an unfair competitive advantage as a result of its covert recording.

76.     Plaintiffs and the Class have been injured by paying more for Alexa Devices than they would have been willing to pay were it fully disclosed that such devices are recording, storing, analyzing and utilizing their private information. Additionally, Plaintiffs and the Class have been harmed in their privacy interests through this conduct.

77.     Plaintiffs and the Class expected when they purchased their Alexa Devices, based on Amazon's representations, that those devices only "listened" when prompted by the use of the "wake word," and did not expect that recordings would be stored and used for other purposes by Amazon. These considerations are material to Plaintiffs and the Class as reasonable consumers. Had Plaintiffs and the Class known this, they would either have not purchased the Alexa Device or would have

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   demanded to pay less.

2       78.     Plaintiffs and the Class are entitled to damages, including treble damages, and reasonable

3   attorney's fees pursuant to RCW § 19.86.090.

4                                   **COUNT THREE**

5                       **Violation of the Washington Wiretapping Law**

6                       **Wash. Rev. Code §§ 9.73.030, *et seq.***

7       79.     Plaintiffs incorporate all preceding and succeeding allegations as if fully set forth herein.

8       80.     Plaintiffs bring this claim individually and on behalf of the Class.

9       81.     Washington law prohibits the interception or recording of a private phone call, in-person

10  conversation, or electronic communication, unless all parties to the communication consent. RCW §

11  9.73.030.

12      82.     Plaintiffs and the Class used Alexa Devices in their homes and other private locations.

13      83.     When Plaintiffs and the Class used the Alexa Devices, Amazon recorded speech and

14  other sounds, as well as details of the device interactions, and stored those recordings on its cloud servers

15  indefinitely.

16      84.     Amazon conducted analysis using both human and artificial intelligence analysts of these

17  stored recordings and data and made use thereof for their own business purposes.

18      85.     At the time they purchased their Alexa Devices, Plaintiffs and the Class had no reason to

19  expect, and did not expect, that Amazon would create permanent recordings of their speech and other

20  sounds and details of their Alexa interactions.

21      86.     Rather Plaintiffs and the Class reasonably expected that their speech and other sounds

22  and details of their Alexa interactions would remain private.

23      87.     Additionally, Plaintiffs and the Class did not consent to their speech and other sounds

24  and details of their Alexa interactions being recorded, stored, analyzed, and made use of by Amazon.

25      88.     Amazon created, analyzed, and utilized the recordings made of Plaintiffs and the Class

26  and the details of their Alexa interactions intentionally.

27      89.     Amazon's creation of persistent recordings of Plaintiffs' and the Class's speech and other

CLASS ACTION COMPLAINT - 22

sounds and details of their Alexa interactions consisted of interception and use of oral and electronic communications without the consent of all parties to those communications, in violation of RCW § 9.73.030.

90.     Amazon's intentional and unlawful conduct violated Plaintiffs' and the Class' right to privacy in their confidential communications as protected by RCW § 9.73.030.

91.     Amazon's intentional and unlawful conduct caused Plaintiffs and the Class injury to their dignity, well-being, and security.

92.     Plaintiffs individually and on behalf of the Class seek (1) an injunction requiring Amazon to obtain consent prior to recording Alexa Device interactions, to delete all such recordings already made, and to implement tools and processes sufficient to prevent such unauthorized recordings in the future; (2) damages equal to $100 per day up to $1,000 under RCW § 9.73.060; (3) costs and reasonable attorney's fees under RCW § 9.73.060.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly aggrieved persons, pray for judgment against Defendant as follows:

1.     For an order certifying that the action may be maintained as a class action and appointing Plaintiffs and their undersigned counsel to represent the Class in this litigation;

2.     An order appointing Plaintiffs as class representatives;

3.     An order appointing counsel for Plaintiffs as class counsel;

4.     For an order declaring that the acts and practices of Amazon, as set out above, violate the state and federal privacy laws cited herein;

5.     Awarding damages, including nominal, statutory, treble damages, and punitive damages where applicable, to Plaintiffs and the Class in an amount to be determined at trial;

6.     For a permanent injunction enjoining Defendant from continuing to harm Plaintiffs and members of the Class and the public, and violating Washington law in the manners described above;

7.     An award of reasonable attorneys' fees and costs;

CLASS ACTION COMPLAINT - 23

8.   An award of pre- and post-judgment interest, to the extent allowable;

9.   An award of such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the Class; and

10.  Such other and further relief as the Court may deem just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial of their claims to the extent authorized by law.

Respectfully submitted,

**TOUSLEY BRAIN STEPHENS PLLC**

Date: June 30, 2021                    By:  *s/ Jason T. Dennett*
                                            Jason T. Dennett, WSBA #30686
                                            jdennett@tousley.com
                                            Kaleigh N. Powell, WSBA #52684
                                            kpowell@tousley.com
                                            1700 Seventh Avenue, Suite 2200
                                            Seattle, WA  98101-4416
                                            Telephone: (206) 682-5600
                                            jdennett@tousley.com

                                            Caleb Marker, *pro hac vice forthcoming*
                                            **ZIMMERMAN REED LLP**
                                            2381 Rosecrans Avenue, Suite 328
                                            Manhattan Beach, CA 90245
                                            Telephone: (877) 500-8780

                                            Brian C. Gudmundson, *pro hac vice forthcoming*
                                            Jason P. Johnston, *pro hac vice forthcoming*
                                            Michael J. Laird, *pro hac vice forthcoming*
                                            **ZIMMERMAN REED LLP**
                                            1100 IDS Center
                                            80 South 8th Street
                                            Minneapolis, MN  55402
                                            Telephone: (612) 341-0400

                                            brian.gudmundson@zimmreed.com
                                            jason.johnston@zimmreed.com
                                            michael.laird@zimmreed.com

                                            *Attorneys for Plaintiffs and the Proposed Class*

CLASS ACTION COMPLAINT - 24